*101 OPINION OF THE COURT
Fuchsberg, J.
In this article 78 proceeding, the petitioner Board of Education of the City of Rochester sought to vacate and annul a decision of the respondent Commissioner of Education determining that the payless suspension of a tenured teacher pending resolution of disciplinary charges against her violated section 3020-a of the Education Law.
On December 4, 1975, petitioner’s superintendent of schools notified the teacher that she had been suspended without pay pursuant to section 41 of the collective bargaining agreement between the Rochester Teachers’ Association and the school district. The relevant portion of that section stated, at subdivision 3: "No eligible teacher within the bargaining unit shall be discharged without good and sufficient cause. If the City School District determines that there is good and sufficient cause for discharge, the teacher and the Association shall be notified in writing. Notification shall also include whether or not the teacher has been suspended with or without pay pending an investigation and recommendation by the Superintendent to the Board of Education ” (emphasis supplied).
The subdivision further provided that, within seven days thereafter, the superintendent was to file a written statement of the charges to the board of education, which would then vote on whether probable cause for discharge existed. If so, subdivision 3 of section 41 required the board to notify the teacher that she could choose to proceed in one of three ways: she could elect not to challenge the board at all, to convene a hearing as provided by section 3020-a of the Education Law,[1] or to invoke the grievance and arbitration process spelled out elsewhere in the collective bargaining agreement. If the statutory route were chosen, the agreement stipulated that "all applicable provisions of section 3020-a shall apply”.
In due course, upon the superintendent’s recommendation of discharge, the board’s vote of probable cause, and the notification of the teacher of her options, the teacher elected to proceed in accordance with section 3020-a. Her suspension *102 without pay was continued by the board. After the conclusion of the hearings, nearly 10 months later, the hearing panel found the teacher guilty of the charges and unanimously recommended her dismissal. The board of education terminated the teacher’s employment on December 16, 1976.
While the disciplinary proceeding was progressing, the teacher appealed the board’s action in suspending her pay to the Commissioner of Education under section 310 of the Education Law. In sustaining the appeal, the commissioner relied on Matter of Jerry v Board of Educ. (35 NY2d 534) for the proposition that section 3020-a forebade the withholding of pay during a period of suspension pending the outcome of disciplinary proceedings (15 Ed Rep 415). The board then commenced this proceeding,[2] in which Special Term, on the rationale that neither the statute nor Matter of Jerry prohibited a contractual provision for payless suspensions, annulled the commissioner’s decision. For its part, the Appellate Division reversed and reinstated the commissioner’s decision. Though it agreed that section 3020-a did not bar a suspension without pay if clearly and expressly provided by contract, the court found the agreement in this case was not specific enough to authorize one (62 AD2d 265).
We modify and hold that, although a provision for a payless suspension may properly be a term of a negotiated agreement, the contractual clause relied upon by the board here does not permit any provisional discontinuance of pay except in conformance with its terms, namely "pending an investigation and recommendation by the Superintendent to the Board”.
 Preliminarily, we dispose of respondent’s contention that the decision of the commissioner sustaining the teacher’s appeal under section 310 was neither arbitrary nor capricious and, hence, not one which was judicially reviewable.[3] True it *103 is, at the time of this proceeding, that section described decisions of the commissioner in section 310 appeals as "final and conclusive, and not subject to question or review in any place or court whatever”. And, it is also a fact that this restrictive language, seemingly bespeaking an unchallengeable power, continued to remain part of the statute until October 26, 1976 (L 1976, ch 857, § 1), when it was withdrawn, specifically to broaden the scope of judicial review (see Matter of Ward v Nyquist, 43 NY2d 57, 61; Governor’s Memorandum of Approval, NY Legis Ann, 1976, p 407). But, even without the change wrought by the statutory amendment, our courts have not hesitated to exercise a reviewing function when, in their opinion, the commissioner had erroneously decided issues involving statutes and questions of law, on the theory that determinations so flawed fell within the rubric of arbitrariness (Matter of Mugavin v Nyquist, 48 AD2d 727, 728, affd 39 NY2d 1003; see Matter of Ross v Wilson, 308 NY 605, 615-617; Matter of Zunic v Nyquist, 48 AD2d 378, 380, affd 40 NY2d 962). Thus, as the courts below recognized, judicial scrutiny was here proper.[4]
Turning now to the substantive issues, we focus first on section 3020-a. As only recently noted, that section serves as "a critical part of the system of contemporary protections that safeguard tenured teachers from official or bureaucratic caprice” (Matter of Abramovich v Board of Educ., 46 NY2d 450, 454; see Ricca v Board of Educ., 47 NY2d 385, 391). Yet, the withholding of a teacher’s pay during a period of suspension is nowhere proscribed, despite the fact that the statute expressly contemplates that a teacher "may be suspended pending a hearing on the charges and the final determination thereof’ (§ 3020-a, subd 2). In fact, a proviso in subdivision 4 of the section impliedly suggests the contrary: "If the employee is acquitted [of the charges], he shall be restored to his position with full pay for any period of suspension.” Reading the statute as a whole, and in the face of an expressed concern for merited restoral of pay, the omission of an explicit term that *104 preserves a teacher’s right to receive compensation during a predetermination suspension cannot be viewed as unintended. Rather, it signals that the right to receive pay is not so inviolable as to withstand abridgment no matter the circumstances (cf. Estro Chem. Co. v Falk, 303 NY 83, 86-87).
Nor is Matter of Jerry v Board of Educ. (35 NY2d 534, supra), inconsistent with this view. In Matter of Jerry, we rejected a school board’s contention that it was empowered by section 3020-a to suspend a teacher without pay pending resolution of the disciplinary proceedings against him. Though we there stated that the statute itself did not authorize the board’s action, we recognized that the Constitution, at least, posed no impediment to a payless suspension. Matter of Jerry, therefore, is not to be read to stand for the proposition that section 3020-a absolutely forbids the withholding of pay during such a suspension.
However, the critical factor here, not present in Jerry, is that a negotiated agreement provides for a provisional interruption of pay (see Board of Educ. v Lakeland Federation of Teachers, 51 AD2d 1033, 1034).
It is no longer to be disputed that, through the process of collective bargaining, a board of education may voluntarily negotiate all matters in controversy unless plainly and clearly prohibited either by statute, by controlling decisional law or by public policy (Matter of Board of Educ. v Yonkers Federation of Teachers, 40 NY2d 268, 273; Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614; Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 130). As we have seen, neither statute nor decisional law forbids the imposition of the payless suspension here. Nor has public policy been held to impede parties from agreeing to modification of section 3020-a rights in other respects (see Board of Educ. v Associated Teachers of Huntington, supra [collective bargaining contract provision for arbitration in lieu of review procedures of subd 5]; cf. Matter of Abramovich v Board of Educ., 46 NY2d 450, supra [waiver of right to hearing as provided in subd 3]). Somewhat relatedly, other public employees, operating in the context of section 75 of the Civil Service Law, have been permitted to substitute for certain statutory protections a negotiated agreement which provides for a suspension without pay until a determination of charges (see Antinore v State of New York, 49 AD2d 6, affd 40 NY2d 921).
*105 Nevertheless, modification or supplementing of a protective statutory scheme, even though not inconsistent with its clear terms, has only been sanctioned by our courts when the explicit language of the parties’ agreement unquestionably manifests their intent to effect such a change (cf. Matter of Board of Educ. v Yonkers Federation of Teachers, 40 NY2d 268, 275, supra; Yonkers School Crossing Guard Union v City of Yonkers, 39 NY2d 964). And, since it is the contention of the board that the agreement before us contemplates something which the statute does not, the board bears the burden of demonstrating what the contract provides (cf. Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 130, supra).
These factors in mind, we examine the board’s claims that subdivision 3 of section 41 clearly authorizes a continuous suspension without pay from the time of the teacher’s notification by the superintendent to the ultimate determination on the charges, which in this case occurred approximately one year later. The provision itself, however, states only that a suspension without pay may be imposed "pending an investigation and recommendation by the Superintendent to the Board of Education”, a period section 41 defines as not to exceed seven days. Thus, far from intending to permit the withholding of pay until an eventual resolution of the disciplinary proceeding, this provision narrowly circumscribes the time during which pay may be interrupted.
This hardly appears to have been an unintended result; recognizing that the disciplinary process could be prolonged, the parties might not have wished an individual teacher, whose guilt of the charges had yet to be established, to be compelled to forego his or her salary for such a duration. And, the parties having considered the subject, we must presume that, if they had intended the suspension without pay to continue, "it would have been a simple matter * * * to have said so in so many words” (Mount Vernon Fire Ins. Co. v Travelers Ind. Co., 47 NY2d 575, 580). So, we reject as the merest speculation the argument that the substitution of the phrase "pending a determination of the charges” in place of the agreement’s explicit language would more accurately reflect the true intention of the parties. In sum, we cannot say the collective bargaining agreement makes provision for a suspension without pay after the superintendent’s investiga *106 tion and recommendation. Therefore, there is no authorization for the board’s action beyond this period.
It follows that the teacher is entitled to back pay, but only from the date of the superintendent’s recommendation to the board. Accordingly, the order of the Appellate Division should be modified in conformity with this opinion and, as so modified, affirmed.
Chief Judge Cqoke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order modified, with costs to appellants, in accordance with the opinion herein and, as so modified, affirmed.

. The section delineates the procedural protections to be afforded a tenured teacher in the event disciplinary charges are brought. Among its requisites is a hearing, which may be public or private at the discretion of the teacher, at which the teacher has the right to be represented by counsel, to testify, to subpoena and cross-examine witnesses and to be furnished with a copy of the transcript (Education Law, § 3020-a, subd 3).

. The teacher, though served, did not answer or appear and has not participated in either of the appeals.

. Section 310, as it then read, provided that:
"Any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same * * * and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action: * * *
"4. By the trustees of any district in paying or refusing to pay any teacher * * *
"7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter * * * pertaining to common schools.”

. We may also treat briefly appellant’s contention, raised for the first time in this court, that the teacher’s failure to file a notice of claim as required by subdivision 1 of section 3813 of the Education Law, bars her right to relief. Though the notice of claim provision is a statutory condition precedent to the prosecution of any action or proceeding against a school district, a defense based on subdivision 1 of section 3813 nevertheless is waived if not raised in the court of original jurisdiction (Flanagan v Board of Educ., 47 NY2d 613, 617; Matter of Schlosser v Board of Educ., 47 NY2d 811).