In the Matter of AUBURN POLICE LOCAL 195, COUNCIL 82, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Respondent, v ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board, Appellant, and CITY OF AUBURN, Respondent.

Third Department, April 6, 1978

**APPEARANCES OF COUNSEL**

*Martin L. Barr (Jerome Thier* of counsel), for appellant.

*Rowley & Forrest, P. C. (Brian J. O'Donnell* of counsel), for Auburn Police Local 195, Council 82, American Federation of State, County and Municipal Employees, AFL-CIO, respondent.

*Harris, Beach, Wilcox, Rubin & Levy* for City of Auburn, respondent.

*Blitman & King (Bernard T. King* and *James R. La Vaute* of

counsel), for American Federation of State, County and Municipal Employees, New York Council 66, AFL-CIO, *amicus curiae.*

## OPINION OF THE COURT

HERLIHY, J.

The petitioner and the City of Auburn commenced negotiations pursuant to the provisions of article 14 of the Civil Service Law (Taylor Law) regarding a new employment contract and the petitioner in those proceedings demanded negotiations on a proposed contract article to govern "Discipline and Discharge". The article contained terms which had not been adopted by the parties in previous contracts and some of the matter would modify and supplement the disciplinary procedures specified in section 75 of the Civil Service Law. The city filed an improper practice charge with the Public Employment Relations Board (PERB) upon the ground that the petitioner was refusing to negotiate in good faith (Civil Service Law, § 209-a) because its demands would affect the disciplinary procedures as set forth in section 75 of the Civil Service Law. PERB in its decision describes the demands and the basis of the city's charges as follows: "Among other things, it would: a. impose a one-year period of limitation upon the bringing of disciplinary charges, while the statute contains a three-year period of limitation; b. restrict disciplinary action to reprimands, fines, suspensions not in excess of thirty days, and dismissal, whereas the statute permits disciplinary action to include 'a reprimand, a fine not to exceed one hundred dollars * * * suspension without pay for a period not exceeding two months, demotion in grade and title, or dismissal from the service;' and c. required that 'Notice of proposed disciplinary action against an employee must be given to the employee, the union president and the employee's union steward', whereas the statute specifies only that 'the person against whom * * * disciplinary action is proposed shall have written notice thereof' ".

In the proceedings before PERB the petitioner asserted that the demands as to discipline were *mandatory* subjects of negotiation, and the city urged that the demands were merely *permissive* subjects of negotiation. PERB disagreed with both of those positions and held that the demands are *prohibited* subjects of negotiation except as to negotiations involving the State of New York.

The primary issue before Special Term and upon this appeal is the question of whether or not PERB's determination that demands affecting section 75 of the Civil Service Law as set forth hereinabove are prohibited subjects of negotiation is unreasonable (see *Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46, 50, 51) and therefore arbitrary and capricious. Special Term found that there was no rational basis for the determination of PERB.

PERB went beyond the specific demands of the petitioner and held that "public employers other than the State of New York are not permitted to negotiate collective agreements containing disciplinary procedures that would supplement, modify or replace the provisions of CSL [Civil Service Law] §§ 75 or 76." Prior to this case PERB had taken the position that discipline was a mandatory subject of negotiation between public employers and employee associations. (See, e.g., *Matter of City of Albany v Helsby,* 56 AD2d 976, 977.) That interpretation was accepted by this court in *Matter of City of Albany v Helsby (supra),* and more particularly in the proceeding in *City of Albany v Albany Police Officers Union* (7 PERB 3132) PERB held that the subject of discipline was a mandatory subject of negotiation as long as it did not deny employees the opportunity to resort to sections 75 and 76 of the Civil Service Law. The reason for the abrupt change in direction by PERB is articulated in its brief on this appeal as follows: "It must be stressed that PERB does not take the position that local governments are not required to negotiate over working conditions which lead to the invocation of disciplinary proceedings under § 75. It must also be stressed that, but for the prohibition implicit in CSL § 76.4, disciplinary procedures would be a mandatory subject of negotiations."

The proper standard to be applied here is set forth in *Matter of Board of Educ. v Yonkers Federation of Teachers* (40 NY2d 268, 273): "The public employer's power to bargain collectively, while broad, is not unlimited. Although a public employer is free to negotiate any matter in controversy, whether or not it involves a term or condition of employment subject to mandatory bargaining, it may do so only in the absence of 'plain and clear' prohibitions in statute or controlling decision law, or restrictive public policy [citations omitted]."

Section 75 of the Civil Service Law prohibits a public employer from disciplining certain classes of employees except

for "incompetency or misconduct" and provides that such employees must be given certain procedural protections in the nature of due process if so charged. Section 76 of the Civil Service Law provides for appeals by employees from adverse determinations and prior to 1970 it made the following provision in subdivision 4: "4. Nothing contained in sections seventy-five or seventy-six of this chapter shall be construed to repeal or modify any general, special or local law or charter provision relating to the removal or suspension of officers or employees in the *competitive* class of the civil service of the state or any civil division." (Emphasis added.) In 1970 the following sentence was added to the above-quoted subdivision 4: "Such sections may be supplemented or modified by agreements negotiated between the *state* and an employee organization pursuant to article fourteen of this chapter." (Emphasis added.) Finally, in 1972 the quoted subdivision 4 was further amended to provide that the section could not only be modified or supplemented, but also replaced by agreements "between the *state* and an employee organization". (Emphasis added.)

■ PERB urges that the amendments to subdivision 4, by referring solely to the State, require the conclusion that the Legislature impliedly established a public policy against negotiations affecting section 75 except by the State (see *Board of Educ. v Areman,* 41 NY2d 527, 531, as to public policy and the right or power to negotiate). PERB contends that the reference to the State in the amendments to subdivision 4 invokes the maxim *expressio unius est exclusio alterius* (see McKinney's Cons Laws of NY, Book 1, Statutes, § 240). However, the maxim is merely an aid in statutory construction and should be applied to accomplish the legislative intent, not to defeat it *(id., Goldstein v City of Long Beach,* 28 AD2d 558).

It is readily apparent that sections 75 and 76 were enacted in 1958 and since the Taylor Law was not enacted until 1967 it cannot be concluded that there was originally any intent on the part of the Legislature to exclude or preclude bargaining as to discipline. The 1970 and 1972 amendments were enacted to implement the collective bargaining agreements reached by the State with its employees (NY Legis Ann, 1970, p 493; NY Legis Ann, 1972, p 39). Assuming that the Legislature in 1972 considered that such agreements were prohibited by sections 75 and 76 and, therefore, enacted the amendments to subdivision 4 of section 76, it does not establish an intent in 1958 to

assert such a prohibition or an intent in 1972 to *create* such a prohibition.

As to public policy, the recent decision in *Antinore v State of New York* (40 NY2d 921, 922, affg 49 AD2d 6) establishes that the safeguards of sections 75 and 76 may be waived by an employee without violating the constitutional safeguards of due process and equal protection of the laws. In the case of *Matter of Acting Supt. of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509, 514) the court found that there was no public policy which would prohibit disciplinary disputes from being submitted to arbitration as to teachers. (See, also, *Board of Educ. of Union Free School Dist. No. 3 v Associated Teachers of Huntington,* 30 NY2d 122.)

As to municipal employees, the Court of Appeals recently observed in *Binghamton Civ. Serv. Forum v City of Binghamton* (44 NY2d 23, 28): "It is well settled, however, that disputes relating to whether the necessary predicate exists for taking disciplinary action against a public employee and the proper penalty to be imposed if that predicate exists are terms and conditions of employment under the Taylor Law (Civil Service Law, § 204, subd 1), and as such, may be agreed by a public employer and employee to be resolved by arbitration *(Board of Educ. v Associated Teachers of Huntington,* 30 NY2d 122, 131-132)."

The foregoing requires the conclusion that PERB has failed to establish a reasonable basis for its determination as to the legal effect of subdivision 4 of section 76 of the Civil Service Law as applied to both sections 75 and 76. It should be noted that while PERB has erred as to its construction of public policy and the effect of subdivision 4 of section 76, this opinion does not pass upon the question of outer limits to such negotiations or final contracts that might impinge upon the public policy requiring public employers to maintain the merit system. In the present case it is found that disciplinary procedures are not per se prohibited subjects of collective bargaining.

The judgment should be affirmed, without costs.

GREENBLOTT, J. P., SWEENEY, MAIN and MIKOLL, JJ., concur.

Judgment affirmed, without costs.